```
_____  :
                               :
KIMBERLY SPELLMAN,             :
                               :     Civ. Action No. 18-13744(NLH)
          Petitioner,          :
                               :
     v.                        :     OPINION
                               :
UNITED STATES OF AMERICA,      :
                               :
          Respondent.          :
_____  :
```

**APPEARANCES:**

KIMBERLY SPELLMAN
FCI ALICEVILLE
P.O. BOX 4000
ALICEVILLE, AL 35442

    Pro se Petitioner.

PATRICK C. ASKIN
OFFICE OF THE U.S. ATTORNEY
DISTRICT OF NEW JERSEY
401 MARKET STREET
4TH FLOOR
CAMDEN, NJ 08101

    Counsel for Respondent.

**HILLMAN**, **District Judge**

    Petitioner Kimberly Spellman, a prisoner currently confined at the Federal Correctional Institution in Aliceville, Alabama, files the present motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1) (the "Petition"). Respondent was Ordered to answer the Petition and has done so. For the reasons that follow, the Petition will be

denied and no certificate of appealability will issue.

**BACKGROUND**

Petitioner was one of more than thirty individuals arrested as part a drug conspiracy involving the "Dirty Block" gang. Those involved conspired to sell heroin in and around a public housing complex located in Atlantic City, New Jersey. On March 18, 2013, Petitioner was charged by criminal complaint with conspiracy to distribute heroin in the amount of one kilogram or more, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). United States v. Spellman, No. 14-cr-50-NLH-18, ECF No. 1 (D.N.J. March 18, 2013). On June 4, 2014, Petitioner was charged by superseding indictment, along with a number of other co-defendants, with conspiracy to distribute heroin in the amount of one kilogram or more, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 860 (Count 1); violations of 21 U.S.C. § 856 (Count 7); possession of firearms and brandishing of said firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii), and (iii) (Count 10); and numerous counts of using a communication facility to further a drug conspiracy, in violation of 21 U.S.C. § 843(b) (Counts 14, 26, 54, 55 and 92). United States v. Spellman, No. 14-cr-50-NLH-18, ECF No. 194 (D.N.J. June 4, 2014).

On June 9, 2015, the Government filed a superseding information against Petitioner. United States v. Spellman, No.

14-cr-50-NLH-18, ECF No. 701 (D.N.J. June 9, 2015). That same

day, Petitioner entered into a plea agreement with the

Government. United States v. Spellman, No. 14-cr-50-NLH-18, ECF

No. 704 (D.N.J. June 9, 2015). In relevant part, Petitioner

agreed that in exchange for her plea of guilty to the

superseding information charging that she "conspired with others

to distribute, and to possess with intent to distribute a

mixture and substance containing a detectable amount of heroin

within 1,000 feet of a public housing complex, contrary to 21

U.S.C. §§ 841(a)(1), 860 and 841(b)(1)(C), in violation of 21

U.S.C. § 846[,]" the Government would forego charging any

additional crimes associated with the underlying conspiracy.

See id.

    As for sentencing, the plea agreement explains that the

offense to which Petitioner would plead guilty carried a

statutory minimum sentence of one year, and a statutory maximum

sentence of forty years. Id. Despite this wide range of

sentencing potential, an addendum to the plea agreement,

identified as "Schedule A," explains that the Government would

recommend a sentence of twenty-four months and would not seek a

higher sentence. Id. at 6, ¶8. Plaintiff acknowledged however,

that the parties' agreement was not binding on the Court;

instead, Petitioner recognized, the sentence length was an issue

to be decided by the Court:

The sentence to be imposed upon Kimberly Spellman is within the sole discretion of the sentencing judge, subject to the provisions of the Sentencing Reform Act, 18 U.S.C. §§ 3551-3742, and the sentencing judge's consideration of the United States Sentencing Guidelines. The United States Sentencing Guidelines are advisory, not mandatory. The sentencing judge may impose any reasonable sentence up to and including the statutory maximum term of imprisonment and the maximum statutory fine. This Office cannot and does not make any representation or promise as to what guideline range may be found by the sentencing judge, or as to what sentence Kimberly Spellman ultimately will receive.

Id. at 2.

The parties also agreed that:

(1)  the applicable sentencing guidelines base offense level of 26 would apply, "because at least 400 grams but less than 700 grams of heroin was involved in the offense. U.S.S.G. § 201.1(c)(7)[;]"

(2)  "[t]he Specific Offense Characteristic relating to the possession of a dangerous weapon (including a firearm) applies" because "her co-conspirators possessed firearms in furtherance of the drug trafficking conspiracy, and further agrees that she either knew of such possession or that it was reasonably foreseeable to her[;]"

(3)  "[a]pplication of this Specific Offense Characteristic results in an increase of 2 levels. U.S.S.G. § 201.1(b)(1)[;]"

(4)  "[t]he Specific Offense Characteristic relating to the distribution of controlled substances in or near a protected location applies, as the defendant and co-conspirators distributed the quantity of heroin referred to above in a public housing complex in Atlantic City, New Jersey[;]"

(5)    "[p]ursuant to U.S.S.G. § 201.2(a)(l), this
               results in an increase of 2 levels[;]" and

        (6)    "a downward adjustment of 2 levels for
               acceptance of responsibility is
               appropriate[.]"

Id. at 6-7.  After accounting for all stipulated level

enhancements and reductions, the parties agreed that the

appropriate offense level was 28.  Id. at 6, ¶7.

        Petitioner acknowledged that she received the plea

agreement from her counsel, and that she read it, understood it,

and discussed it with her attorney, including those portions

"addressing the charge, sentencing, [and] stipulations[.]"  Id.

at 5.  Plaintiff further acknowledged that she understood the

plea agreement "fully" and "accept[s] its terms and conditions

and acknowledge[s] that it constitutes the plea agreement

between the parties."  Id.

        In a subsequently filed Application for Permission to Enter

Plea of Guilty, Petitioner acknowledged again that her "lawyer

has explained, and [she] underst[oo]d, that only the judge may

decide what punishment [she] shall receive, and that if any

person has told [her] otherwise, that person is not telling . .

. the truth" and that "the sentence to be imposed upon [her] is

within the sole discretion of the sentencing judge" (ECF No.

705 at ¶¶24-25).  Petitioner also recognized that she "will have

no right to withdraw [her] plea on the grounds that anyone's

prediction as to the Guidelines range or expectation of sentence proves inaccurate." Id. at ¶33. The application further confirmed what was contained in the plea agreement: that Petitioner agreed to an offense level of 28 and that the government would not seek a sentence greater than 24 months. Id. at ¶38.

Petitioner confirmed that the plea agreement contained additional stipulations, including that

> I understand that my plea agreement sets forth a Guidelines calculation which I agree is the total Guidelines offense level applicable to me in this case. I further understand that I have waived the right to argue that the sentencing judge should impose a sentence below the range that results from this offense level, and that the government has waived the right to argue for a sentence above the range that results from this offense level.

Id. at ¶39.

On June 9, 2015, the parties appeared before Judge Irenas for a plea hearing. Petitioner acknowledged:

- that she was satisfied with Mr. Huff's representation of her, (ECF No. 10-3 ("Plea Hearing Transcript" or "Plea T.") at 7:10-15);

- that she and her lawyer had discussed sentencing and the guidelines, (Plea T. 19:19-24);

- that she and the Government agreed to the applicable offense level, (Plea T. 20:11-18); and

- that she understood the court was not bound by any sentence recommendation (Plea T. 21:12-16).

The following colloquy occurred between Petitioner and Judge

Irenas:

> THE COURT: Okay. Now -- I already asked you this. You
> discussed sentencing with your attorney and he explained
> all of the things I covered with you, is that right?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Do you understand that you will not be
> able to withdraw your plea in this case on the grounds –
>
> THE DEFENDANT: Yes.
>
> THE COURT: -- that anyone's prediction as to the guideline
> range or actual sentence proved to be inaccurate or wrong,
> for some reason. You understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Now, maybe in simple terms, if you don't like my
> sentence, that's not a ground for withdrawing your plea.
> You understand that?
>
> THE DEFENDANT: Yes.

(Plea T. 23:6-21). Further colloquy regarding Petitioner's plea

followed:

> THE COURT: Now, have you reviewed the plea agreement?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you accept the plea agreement in accordance
> with its terms?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you accept Schedule A of the plea agreement
> in accordance with its terms?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you read the plea agreement?

THE DEFENDANT: Yes.

THE COURT: Did you understand it?

THE DEFENDANT: Yes.

THE COURT: And did you have the chance to go over it with Mr. Huff?

THE DEFENDANT: Yes.

THE COURT: Did you have an opportunity to ask him whatever questions you wanted to ask him?

THE DEFENDANT: Yes.

THE COURT: And did he answer those questions satisfactorily?

THE DEFENDANT: Yes.

THE COURT: Did you sign the plea agreement yourself?

THE DEFENDANT: Yes.

(Plea T. 28:19 to 29:25). Plaintiff offered an allocution in which she admitted she conspired to sell and possess more than 100 grams of heroin and acknowledged that "the amount of heroin that [she was] jointly responsible for distributing is between 400 and 700 grams[.]" (Plea T. 32:1 to 33:12). Petitioner also testified that her possession occurred within 1,000 feet of a protected area. (Plea T. 34:13-18) ("MR. ASKIN: Ms. Spellman, in addition to the Court's questions, one more question. Do you agree that you and your co-conspirators distributed or possessed with intent to distribute heroin within 1,000 feet of a public housing complex? THE DEFENDANT: Yes."). Plaintiff acknowledged

guilt for such a crime. Finding Petitioner competent and intelligent, the Court accepted the plea and set the matter down for sentencing.

Judge Irenas passed away before sentencing Petitioner and the matter was transferred to this Court for such purposes. On April 5, 2016, this Court held a sentencing hearing at which Petitioner was present. Consistent with the plea agreement and pre-sentencing report, and following an independent analysis of both, this Court adopted an offense level of 28. The Court further found, consistent with Petitioner's prior allocution and the plea agreement, that Petitioner accepted responsibility for 400-700 grams of heroin in a protected location and that Petitioner and her co-conspirators possessed and brandished firearms in furtherance of their drug trafficking conspiracy. Based on those findings, the requisite sentencing guidelines in effect and applicable at that time called for a range of between 78- and 97-months' imprisonment. See (ECF No. 10-1 ("Sentencing Transcript" or "Sen. T") at 6:5 to 8:5). This Court then entertained argument on a downward variance. Ultimately, the Court determined that a downward variance was appropriate, but not to the degree the Petitioner had argued for. The Court spent significant time reviewing the sentencing factors at 18 U.S.C. § 3553(a) and the circumstances of Petitioner's behavior, including that she (1) used alias' to rent cars used to traffic

narcotics, (2) was present at drug transactions, (3) occupied a stash house, (4) knew that weapons and drugs were stored in the home she occupied, and (5) was involved, even if in a more limited role, in the murder of a rival drug dealer. Moreover, the Court found that, after she was arrested, Petitioner was largely non-compliant with pre-trial services. The Court noted that Petitioner had repeatedly tested positive for illicit narcotics after arrest, frequently ignored or failed to participate in her treatment programs, and was often non-responsive to authorities. Ultimately, the Court sentenced Petitioner to a term of 60 months imprisonment.

Petitioner appealed her sentence to the Third Circuit, which affirmed it on April 18, 2017. United States v. Spellman, 686 F. App'x 113 (3d Cir. 2017). On April 23, 2018, Petitioner moved before the Third Circuit for rehearing en banc, which was denied on May 3, 2018. United States v. Spellman, No. 16-1876, Doc. # 3112920764 (3d Cir. May 3, 2018).

On September 11, 2018, Petitioner filed the present Petition arguing that she had ineffective assistance of counsel because: (1) counsel failed to file a direct appeal that "advocated relief[;]" (2) counsel failed to object to a sentencing guideline enhancement which resulted in "impermissible double counting[;]" (3) counsel failed to object to the "firearm enhancement[;]" and (4) counsel failed to object

10

to the "drug quantity attributed" to her.  (ECF No. 1).

## ANALYSIS

I.  Legal Standard: 28 U.S.C. § 2255

Title 28 U.S.C. § 2255 provides, in pertinent part:

A prisoner in custody under sentence of a court
established by Act of Congress claiming the right to
be released upon the ground that the sentence was
imposed in violation of the Constitution or laws of
the United States, or that the court was without
jurisdiction to impose such sentence, or that the
sentence was in excess of the maximum authorized by
law, or is otherwise subject to collateral attack, may
move the court which imposed the sentence to vacate,
set aside or correct the sentence.

28 U.S.C. § 2255(a).  See gen. U.S. v. Thomas, 713 F.3d 165 (3d

Cir. 2013), cert. denied, 570 U.S. 927, 133 S. Ct. 2873, 186 L.

Ed. 2d 926 (2013) (detailing the legislative history of § 2255).

A criminal defendant bears the burden of establishing her

entitlement to § 2255 relief.  See United States v. Davies, 394

F.3d 182, 189 (3d Cir. 2005).  Moreover, as a § 2255 motion to

vacate is a collateral attack on a sentence, a criminal

defendant "must clear a significantly higher hurdle than would

exist on direct appeal."  United States v. Frady, 456 U.S. 152,

166, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982).

This Court recognizes it has a duty to construe pro se

pleadings liberally.  See United States v. Otero, 502 F.3d 331,

334 (3d Cir. 2007) (citing Haines v. Kerner, 404 U.S. 519, 520,

92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)).

11

II.  Ineffective Assistance of Counsel Standard

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel.  See Strickland v. Washington, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  A defendant who alleges ineffective assistance must satisfy the two-part test outlined in Strickland:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.

To show deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." Id. at 686-88.  A petitioner must identify the particular acts or omissions that are challenged as unprofessional.  See id. at 690.  Under this first prong of the Strickland test, scrutiny of counsel's conduct must be "highly deferential."  See id. at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.  The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the

12

circumstances of counsel's challenged conduct, and to evaluate
the conduct from counsel's perspective at the time." Id. at
689. If counsel makes "a thorough investigation of law and
facts" about his plausible options, then counsel's strategic
choices are "virtually unchallengeable." Gov't of Virgin
Islands v. Weatherwax, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing
Strickland, 466 U.S. at 690-91).

The second prong of the Strickland test requires the
petitioner to prove prejudice. See Strickland, 466 U.S. at 693.
To demonstrate prejudice, the defendant must show that counsel's
deficient performance "actually had an adverse effect on the
defense." Id. at 693. "The defendant must show that there is a
reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different.
A reasonable probability is a probability sufficient to
undermine confidence in the outcome." Id. at 694. "The
likelihood of a different result must be substantial, not just
conceivable." Harrington v. Richter, 562 U.S. 86, 112, 131 S.
Ct. 770, 178 L. Ed. 2d 624 (2011).

In the context of a guilty plea, the prejudice prong
requires that a petitioner "show that there is a reasonable
probability that, but for counsel's errors, [they] would not
have pleaded guilty and would have insisted on going to trial."
Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d

203 (1985).  Only attorney errors that affect the outcome of a criminal proceeding will be grounds for habeas relief. Strickland, 466 U.S. at 691.  The requirement of prejudice reflects the substantial interest in the finality of guilty pleas that would be too easily undermined by defendants seeking a more favorable outcome to challenge a plea after the fact. Hill, 474 U.S. at 58.  "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Strickland, 466 U.S. at 697.

A.  Petitioner's Point 1: Failure To File A Direct Appeal
    Advocating Relief

Petitioner argues that because she was "in transit between several [correctional] institutions" shortly after her sentencing, she was "unable to properly communicate with counsel" regarding her direct appeal.  (ECF No. 1-1 ("Pet. Br.") at 1).  Petitioner argues that this resulted in viable grounds for relief not being presented on direct appeal.  Id.

"[A] generic statement that communications with counsel were insufficient fails under Strickland."  McClain v. United States, No. 12-2205, 2013 U.S. Dist. LEXIS 37641, *17 (D.N.J.

March 19, 2013) (Wolfson, C.J.).  "A habeas petitioner cannot

establish ineffective assistance of counsel by 'assert[ing] . .

. a mechanical calculation of alleged meetings and then, self-

servingly, declare[ing] the amount of such alleged meetings

insufficient.'"  Id. at *17-18 (quoting Cox v. Ricci, No. 08-

2655, 2010 U.S. Dist. LEXIS 115711, at *15-16 (D.N.J. Oct. 29,

2010)).  Instead, the Court looks to the communications between

client and counsel to determine whether they were meaningful.

See id. at *18 ("Here, there is no indication that defense

counsel failed to meaningfully communicate with Petitioner.").

Where a petitioner maintains that counsel spent insufficient

time "meeting with Petitioner and/or discussing the strategy of

the case" but the record proves that "Petitioner's counsel was

well-aware of key aspects and minute details of Petitioner's

case and consistently and ardently presented Petitioner's

position . . . throughout every stage of the [case], . . .

Petitioner's disappointment with the amount of time . . . spent

communicating with his defense attorney fails to establish that

his counsel did not function as a meaningful adversary. . . ."

See id. at *19 (quoting Gambino v. Warden of N.J. State Prison,

No. 11-4221, 2013 U.S. Dist. LEXIS 52, at *40-41 (D.N.J. Jan. 2,

2013)).

     In the present action, Petitioner does not allege she

attempted to communicate with counsel and was, for some reason,

unable to do so. Instead, she simply alleges that her
circumstances were such that communication may have been more
difficult than desired. More specifically, Petitioner argues
that this lack of communication resulted in viable grounds for
relief not being presented on appeal.

The Court finds nothing in the record that suggests
Petitioner was denied access to her attorney in preparing for
any direct appeal; instead, an affidavit of Petitioner's counsel
indicates that "[a]fter sentencing, [counsel] consulted with the
Petitioner who indicated that she wanted to appeal the length of
the sentence" and on November 15, 2016, such an appeal was filed
with the Court of Appeals. (ECF No. 10-4 at ¶¶11-14, 24).
Counsel's affidavit further explains that copies of all relevant
appellate documents were transmitted to Petitioner once
available to him. Such facts suggest adequate dialogue and
continued communications between Petitioner and counsel, despite
Petitioner's assertions otherwise.

Moreover, while Petitioner suggests she forwent viable
arguments on appeal due to an alleged inability to communicate
with counsel, Petitioner does not specifically identify
allegedly viable grounds that were not advanced. Such claims
are of the vague and general type that courts will not rely on
in granting habeas relief. See gen. McClain, 2013 U.S. Dist.
LEXIS 37641 at *17 (generic statements alleging deficient

16

communications do not warrant habeas relief).  Because
Petitioner does not identify the arguments she forewent, the
Court cannot determine they were viable, and therefore, cannot
find that Petitioner was prejudiced by counsel's decision not to
advance them.

These facts, taken together, indicate Petitioner was not
deprived of meaningful consultation with counsel regarding her
appeal.  Indeed, quite the opposite appears true.  To the extent
Petitioner argues that her contacts were not numerous enough,
such is insufficient grounds to warrant habeas relief.  See
McClain, 2013 U.S. Dist. LEXIS 37641 at *17.

Petitioner bears the burden of showing entitlement to
habeas relief.  Based upon the record before this Court,
Petitioner has not carried the burden of establishing
entitlement to § 2255 relief on this argument.  See United
States v. Davies, 394 F.3d at 189.

B. Petitioner's Point 2: Failure To Object To Enhancement
   2d1.2(A)(1) That Resulted In Impermissible Double Counting

Petitioner argues that counsel was ineffective by not
objecting to a two-point enhancement under U.S.S.G. 2D1.2(a)(1)
arising out of her charge for possessing heroin with the intent
to distribute it within 1,000 feet of a protected location,
namely, a public housing facility, contrary to 21 U.S.C. § 860.
Because Petitioner acknowledge during the plea and sentencing

17

proceedings that this enhancement would apply, counsel's failure
to object to the enhancement does not warrant a finding that
counsel was ineffective.

There "can be no Sixth Amendment deprivation of effective
counsel based on an attorney's failure to raise a meritless
argument." Kilkeary v. United States, 722 Fed. Appx. 207, 211
(3d Cir. 2018) (quoting United States v. Sanders, 165 F.3d 248,
253 (3d Cir. 1999)). Where a petitioner cannot establish that
"there is a reasonable probability that, but for defense
counsel's failure to raise an objection, the result of the
proceedings would have been different[,]" relief is not
warranted. See id. at 211-12. Such may be the case where a
defendant admits to the thing not objected to by counsel. See
id. at 212. Where that is the case, a petitioner "cannot
establish that he was prejudiced by his counsel's inaction" See
id.

U.S.S.G. 2D1.2(a)(1) provides that a two-point enhancement
applies where the "controlled substances directly involve[e] a
protected location or an underage or pregnant individual[.]"
U.S.S.G. 2D1.2(a)(1). During the plea hearing, Petitioner
testified in a manner consistent with application of the two-
point enhancement:

> MR. ASKIN: Ms. Spellman, in addition to the
> Court's questions, one more question. Do you agree
> that you and your co-conspirators distributed or

> possessed with intent to distribute heroin within
> 1,000 feet of a public housing complex?
>
> THE DEFENDANT: Yes.

(Plea T. 34:13-18). Counsel filed an affidavit swearing that Petitioner never asked him to "object to the enhancement for distribution of heroin within 1,000 feet of the public housing complex." (ECF No. 10-4 at ¶29). Moreover, counsel's objection to such an application would have been contrary to the clear language of the guidelines, Petitioner's testimony, the stipulations in the plea agreement, and all the evidence in the case that centered on a drug gang that had taken over a public housing project; in other words, it would have been meritless. Therefore, Petitioner does not meet step one of the <u>Strickland</u> test as she cannot establish that by failing to object to this enhancement, counsel's performance was deficient.

C. <u>Petitioner's Point 3: Failure To Object To Firearm Enhancement</u>

Petitioner argues that counsel was deficient by failing to object to the application of a two-point firearm enhancement pursuant to U.S.S.G. § 201.1(b)(1). Essentially, Petitioner argues the Government did not adequately establish that a weapon was used or present in furtherance of the conspiracy, and therefore, that the enhancement should not have applied.

Such an argument is belied by the Petitioner's plea agreement, in which she agrees that:

> [t]he Specific Offense Characteristic relating to the
> possession of a dangerous weapon (including a firearm)
> applies[.]  Kimberly Spellman agrees that her co-
> conspirators possessed firearms in furtherance of the
> drug trafficking conspiracy, and further agrees that
> she either knew of such possession or that it was
> reasonably foreseeable to her.  Application of this
> Specific Offense Characteristic results in an increase
> of 2 levels. U.S.S.G. § 201.1(b)(1).

(ECF No. 10-2 at 6, ¶4).  Moreover, the evidence in the

underlying prosecution demonstrated that Petitioner was well

aware of the Dirty Block gang's use of firearms to protect its

turf.  When one rival drug dealer was brutally shot by Dirty

Block enforcer Malik Derry while riding a bicycle, Petitioner

herself texted her congratulations to other gang members: "first

homicide of da year, head shot." United States v. Derry, 14-cr-

50 (D.N.J.), Docket No. 923 at p. 24.

In light of the facts before the Court, any objection made

to such an enhancement would have been meritless, and therefore,

cannot form the basis for habeas relief.  See Kilkeary, 722 Fed.

Appx. at 211 (quoting Sanders, 165 F.3d at 253) ("no Sixth

Amendment deprivation of effective counsel based on an

attorney's failure to raise a meritless argument.").

### D. Petitioner's Point 4: Failure To Object To Drug Quantity Attributed To Petitioner

Petitioner argues that counsel was deficient by failing to

object to the drug quantity attributed to her.  Petitioner did,

however, admit to the quantity at issue.  (Plea T. 33:10-13)

("THE COURT: Did you acknowledge that the amount of heroin that you were jointly responsible for distributing is between 400 and 700 grams of heroin? THE DEFENDANT: Yes."). While not stated expressly, Petitioner appears to suggest that her decision to plead guilty and to stipulate to such facts, however, followed her counsel's alleged representation that she would receive a 24-month sentence. Such an argument lacks merit.

Counsel's failure to object to the quantity of heroin Petitioner stipulated to possessing was not error, and would have been meritless; such is not a basis for habeas relief. See Kilkeary, 722 Fed. Appx. at 211 (quoting Sanders, 165 F.3d at 253). Nor can Petitioner obtain relief by arguing that she only stipulated to such amounts in hopes of getting a lesser sentence. The record belies Petitioner's argument that she pled guilty only due to her expectation of receiving a 24-month sentence.[1] Petitioner has not met her burden of showing she is

---

[1] First, Petitioner was reminded on several occasions, on the record, that while the Government agreed not to seek a sentence of more than 24 months in length, the Court was not bound by that stipulation:

> THE COURT: And you understand that at least in the plea agreement itself, the government has agreed not to ask for a sentence of greater than 24 months.

> THE DEFENDANT: Yes.

> THE COURT: But you understand I'm not bound by that. I mean, I'm not -- I don't have to follow the government's recommendation either upward or downward,

entitled to habeas relief on this point.

   III. No Evidentiary Hearing Is Necessary

   Section 2255 gives a district court some discretion whether

to hold an evidentiary hearing on a § 2255 motion.  See U.S. v.

Carter, 477 F. App'x 875, 876 (3d Cir. 2012) (citing Virgin

Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)).  In

exercising that discretion, a district court must first

determine whether the facts asserted, viewed in the light most

favorable to the prisoner, if proven, would entitle the prisoner

to relief; if so, the district court then must consider whether

an evidentiary hearing is needed to determine the truth of the

allegations.  See Nickens v. U.S., No. 09-cv-4278, 2011 WL

4056287, *5 (D.N.J. Sept. 12, 2011) (citing Gov't of the Virgin

_____

        I don't have to follow it.  You understand that?

        THE DEFENDANT: Yes.

        THE COURT: But they can't argue for more than 24
   months.  You understand that?

        THE DEFENDANT: Yes.

        THE COURT: Okay.

(Plea T. 21:8-20).  Petitioner also recognized that she would
not be able to withdraw her plea if the sentence exceeded that
which was contemplated in the plea agreement.  (Plea T. 23:18-
21) ("THE COURT: Now, maybe in simple terms, if you don't like
my sentence, that's not a ground for withdrawing your plea.  You
understand that?  THE DEFENDANT: Yes.").  These facts belie
Plaintiff's argument that she only accepted responsibility for
the quantities at issue in order to obtain a lesser sentence.

22

Islands v. Weatherwax, 20 F.3d 572, 574 (3d Cir. 1994)).  Thus,

a district court may summarily deny a § 2255 motion, without a

hearing, only where the "the motion and the files and records of

the case conclusively show that the prisoner is entitled to no

relief[.]"  28 U.S.C. § 2255(b); U.S. v. McCoy, 410 F.3d 124,

134 (3d Cir. 2005).  Because the Court finds that the Petition

lacks merit, no hearing is necessary.

IV.  Certificate Of Appealability Will Not Issue

Because the Court will deny Petitioner's § 2255 motion, the

Court must determine whether to issue a certificate of

appealability ("COA").  A COA is a "jurisdictional prerequisite"

to an appeal on the merits, and "the COA statute establishes

procedural rules and requires a threshold inquiry into whether

the circuit court may entertain an appeal."  U.S. v. Doe, 810

F.3d 132, 143 (3d Cir. 2015) (quoting Miller-El v. Cockrell, 537

U.S. 322, 336 (2003)).  Section 2253(c)(2) provides that "[a]

certificate of appealability may issue . . . only if the

applicant has made a substantial showing of the denial of a

constitutional right."  To satisfy that standard, a petitioner

must demonstrate that "jurists of reason could disagree with the

district court's resolution of his constitutional claims or that

jurists could conclude the issues presented are adequate to

deserve encouragement to proceed further."  Banks v. Dretke, 540

U.S. 668, 705 (2004) (quoting Miller-El v. Cockrell, 537 U.S. at

327).  Here, jurists of reason would not disagree with this
Court's determinations.  As such, no COA will issue.

## CONCLUSION

For the reasons set forth above, the Petition shall be
denied.  An appropriate order follows.


Date: <u>March 16, 2020</u>                    <u> s/ Noel L. Hillman_      </u>
At Camden, New Jersey                    NOEL L. HILLMAN, U.S.D.J.